

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/17/2012

| | | |
|---|---|---|
| IN RE: | § § | |
| HDD ROTARY SALES, LLC | § § | CASE NO: 11-38053<br>CHAPTER 11 |
| Debtor(s). | § § § | JUDGE ISGUR |
| TIGER TRADING, INC. | § § § | |
| Plaintiff(s), | § § | |
| vs. | § § | ADVERSARY NO. 11-3566 |
| HDD ROTARY SALES, LLC, *et al* | § § § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

In this adversary proceeding, Tiger Trading, Inc. seeks a declaration that it owns a 30% interest in the PTech+ technology and its pending patent (hereinafter referred to simply as "PTech+"). (ECF No. 10 at 1). Robert Ogle (the Plan Agent appointed pursuant to the confirmed plan) denies Tiger Trading's ownership claim. In the alternative, Ogle argues that Tiger Trading breached the same contract under which its ownership rights arose by failing to pay its share of the PTech+ development costs.

Ogle filed a breach of contract counterclaim along with the answer to Tiger Trading's complaint. Tiger Trading seeks to dismiss Ogle's counterclaim for lack of subject matter jurisdiction. Tiger Trading argues that this Court lacks subject matter jurisdiction because Ogle lacks standing to bring the counterclaim.

Tiger Trading's motion to dismiss is denied.

1

**Background**

PTech+ "was designed to be an increased torque premium connection piece for drill pipe for use primarily in oil and gas drilling." (ECF No. 10 at 3).

Tiger Trading alleges that in 2007, Thorn Huffman (Tiger Trading's president) and Gary Haub (president of the yet-to-be-formed HDD Rotary Sales, Inc.) jointly agreed to fund and support PTech+'s development. (ECF No. 10 at 3-4).

At the time, Cain Pacheco was already working on PTech+ while an employee of Grant Prideco. (ECF No. 10 at 3). Tiger Trading hired Pacheco and paid his exit fee from Grant Prideco. (ECF No. 10 at 3).

In 2008, the parties formed HDD Rotary Sales, LLC. (ECF No. 10 at 4). Tiger Trading alleges that under the agreement, Tiger Trading was to "supply money, employment, and industry support in the form of expertise, marketing, and sales support, towards the goal of development and sale of the new technology, and would share the costs equally with Haub and/or [HDD Rotary]." (ECF No. 10 at 4). Tiger Trading alleges that, after an early modification to the agreement, PTech+ was to be owned 60% by HDD Rotary, 30% by Tiger Trading, and 10% by Pacheco. (ECF No. 10 at 4). All parties agree that no written agreement was ever executed. Nevertheless, Tiger Trading argues that this alleged oral agreement is enforceable and that Tiger Trading owns 30% of PTech+.

Tiger Trading further alleges that the parties agreed to establish a new entity that would patent, market, license, and supply PTech+. (ECF No. 10 at 4). The ownership structure of the new entity was to reflect the parties' ownership rights in PTech+: 60% for HDD Rotary, 30% for Tiger Trading, and 10% for Pacheco individually. (ECF No. 10 at 4-5). This new entity was never created.

2

HDD Rotary later applied for a patent for PTech+. Tiger Trading alleges that at the same time the application was filed, Pacheco signed a patent assignment form transferring all of Pacheco's interest in PTech+ over to HDD Rotary. (ECF No. 10 at 7). Tiger Trading asserts that this patent assignment form incorrectly stated that Pacheco, as PTech+'s inventor, had full power and authority to transfer 100% ownership rights to HDD Rotary. (ECF No. 10 at 7).

HDD Rotary filed chapter 11 bankruptcy on September 23, 2011. (Case No. 11-38053, ECF No. 1). HDD Rotary included the rights to PTech+ on its schedules. (Case No. 11-38053, ECF No. 19 at 9). Tiger Trading filed this adversary proceeding on November 4, 2011. (ECF No. 1). In the main bankruptcy case, Tiger Trading filed a motion for adequate protection to protect its asserted rights in PTech+. (Case No. 11-38053, ECF No. 47). Tiger Trading and HDD Rotary entered into an agreement, incorporated into an order issued by the Court, concerning the motion for adequate protection on November 21, 2011. (Case No. 11-38053, ECF No. 158).

The terms of the agreed order allowed plan confirmation (and the sale of HDD Rotary's assets, including PTech+) to go forward but delayed distribution of the sale proceeds until final adjudication of this adversary proceeding.

This adversary proceeding will determine the relative rights of the parties and the division of the sale proceeds. Tiger Trading's ownership rights in PTech+, if any, will attach to the sale proceeds. The nature and extent of Tiger Trading's claims against the estate will also be determined in this adversary proceeding. If Tiger Trading does not have a 30% ownership interest in PTech+, Tiger Trading may have an unsecured claim for breach of contract against the estate.

The plan was confirmed on December 22, 2011. (Case No. 11-38053, ECF No. 235). In addition to providing for the sale of HDD Rotary's assets, the confirmed plan provided that a Plan Agent would be employed in order to, among other things, prosecute claims previously held by the bankruptcy estate and retained by the Reorganized Debtor. (Case No. 11-38053, ECF No. 160 at 55). Robert Ogle was later selected as Plan Agent.

Postconfirmation, Ogle filed a counterclaim for breach of contract along with the answer to Tiger Trading's complaint. (ECF No. 48). Ogle alleges that, if Tiger Trading has a 30% ownership interest in PTech+, Tiger Trading breached the same contract under which its rights arose by failing to pay 50% of the PTech+ development costs. Tiger Trading's own description of the alleged contract indicates Tiger Trading and HDD Rotary were to split the development costs equally. (ECF No. 10 at 4).

Tiger Trading then moved to dismiss Ogle's counterclaim for lack of subject matter jurisdiction. This Memorandum Opinion addresses Tiger Trading's motion to dismiss.

## Analysis

Tiger Trading moves to dismiss Ogle's counterclaim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Tiger Trading argues that Ogle lacks standing to bring the counterclaim. If Tiger Trading is correct, then this Court would lack jurisdiction and the counterclaim would have to be dismissed. *See Dynasty Oil and Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 n.1 (5th Cir. 2008).

Tiger Trading is not correct and the motion to dismiss is denied.

4

**Requirements for Postconfirmation Standing Met**

For a postconfirmation debtor (or its representative) to have standing to pursue a preconfirmation cause of action, the claim must have been properly retained in the confirmed plan or disclosure statement.

During a chapter 11 case, the debtor acts as a debtor-in-possession and has essentially the same powers as a bankruptcy trustee, including the right to pursue prepetition claims (and postpetition but preconfirmation claims) on behalf of the bankruptcy estate. 11 U.S.C. § 1107(a). After confirmation, the debtor is no longer the debtor-in-possession and does not have the authority to pursue claims previously owned by the estate—unless those claims were properly retained pursuant to § 1123(b)(3)(B). *See In re United Operating, LLC*, 540 F.3d at 355 ("If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved.").

In *United Operating*, the Fifth Circuit held that for proper claim preservation, "the plan must expressly retain the right to pursue such actions" and the reservation must be "specific and unequivocal." 540 F.3d at 355 (internal citations omitted). In the plan at issue in *United Operating*, the Fifth Circuit found that "[n]either the Plan's blanket reservation of 'any and all claims' arising under the Code, nor its specific reservation of other types of claims under various Code provisions [were] sufficient to preserve the common-law claims" the postconfirmation debtor sought to bring. *Id.* at 356.

In the later case of *In re Texas Wyoming Drilling, Inc.*, the Fifth Circuit revisited the *United Operating* analysis. The Fifth Circuit held that disclosure statements may also be consulted to determine postconfirmation debtor standing. *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011). The Fifth Circuit noted that this holding was "consistent with

5

the purpose of *In re United Operating*'s requirement: placing creditors on notice of the claims the post-confirmation debtor intends to pursue." *Id.* at 551.

The Fifth Circuit then contrasted the language contained in Texas Wyoming Drilling's disclosure statement with the language contained in the plan from *United Operating*:

> Unlike the plan in *In re United Operating*, which contained only a blanket reservation of "any and all claims," TWD's plan and disclosure statement revealed the existence of the Avoidance Actions, the possible amount of recovery to which they would lead, the basis for the actions (namely, pre-petition dividends and transfers to equity interest holders), and that the reorganized debtor intended to pursue the claims.

647 F.3d at 551. The Fifth Circuit found that the language in Texas Wyoming Drilling's disclosure statement satisfied *United Operating*'s "specific and unequivocal" requirement.

HDD Rotary's retention language also satisfies *United Operating*'s "specific and unequivocal" requirement.

Attached as an exhibit to HDD Rotary's Combined Disclosure Statement and Plan of Reorganization is a document entitled Non-Exclusive List of Retained Rights of Action. (Case No. 11-38053, ECF No. 160-3). The document explicitly states that the "list is a nonexclusive list of entities against whom the Reorganized Debtor **will assert** Rights of Action." (Case No. 11-38053, ECF No. 160-3 at 1) (emphasis in original).

The document first puts forth general categories of Rights of Action the Plan Agent will pursue on behalf of the Reorganized Debtor. (Case No. 11-38053, ECF No. 160-3). The two most applicable are "Rights of Action against Persons for failure to pay amounts owed to the Debtor under any applicable contract, agreement, or purchase order" and "Contract, tort or equitable Rights of Action that may exist or subsequently arise." (Case No. 11-38053, ECF No. 160-3 at 2).

The document then lists the entities against which the Reorganized Debtor intends to pursue claims postconfirmation and discusses the nature of those claims in greater detail. (Case No. 11-38053, ECF No. 160-3 at 3-11). Tiger Trading is listed and the adversary proceeding is discussed. (Case No. 11-38053, ECF No. 160-3 at 6-7). Although the parties' legal positions are discussed, the breach of contract counterclaim is not explained.

HDD Rotary also submitted a supplement to the Combined Disclosure Statement and Plan of Reorganization. (Case No. 11-38053, ECF No. 215). The Court noted and approved of the service of the supplement in the order approving the disclosure statement and confirming the plan. (Case No. 11-38053, ECF No. 235 at 4).

The supplement goes into further detail regarding the Tiger Trading adversary proceeding and related causes of action, including the following excerpt:

> In addition, [Tiger Trading] has alleged in paragraph 22 of the Amended Complaint that [Tiger Trading] and HDD agreed to equally split the expenses of developing PTech+. Debtor believes that a predominant amount of the Unsecured Claims against the Debtor that have not been satisfied were incurred in the marketing, sale and development of the PTech+ technology and PTech+ products. . . . All of these facts lead Debtor's counsel to believe that the Debtor may have substantial claims to assert against [Tiger Trading] . . . .

(Case No. 11-38053, ECF No. 215 at 4).

The supplement combined with the disclosure statement and plan satisfy *United Operating*'s "specific and unequivocal" requirement. HDD Rotary states that it retains the right to pursue and that it intends to pursue certain causes of action postconfirmation. In contrast to the blanket reservation contained in *United Operating* ("any and all causes of action arising under the Bankruptcy Code"), HDD Rotary's descriptions are more specific. (Case No. 11-38053, ECF No. 160-3 at 2) ("Rights of action against Persons for failure to pay amounts owed

to the Debtor under any applicable contract . . . .") ("Contract, tort, or equitable Rights of Action that may exist or subsequently arise.").

Additionally, as in *Texas Wyoming Drilling*, the causes of action are later described in further detail. In *Texas Wyoming Drilling*, the disclosure statement first provided a more general description ("Avoidance Actions"), which was later elaborated upon (avoidance actions to recover "prepetition dividends and transfers to equity holders"). HDD Rotary did the same here. The general descriptions ("rights of action for failure to pay amounts owed under contract" and "contract rights of action") are later defined further (actions to recover amounts Tiger Trading agreed to pay for PTech+'s development costs).

Finally, although not required by the Fifth Circuit in *Texas Wyoming Drilling*, HDD Rotary specifically identified Tiger Trading as an entity against which it planned to bring retained causes of action postconfirmation.

In short, like the retention language approved of in *Texas Wyoming Drilling*,[1] the supplement along with the disclosure statement and plan: (i) contained more than a blanket reservation of claims such as "any and all causes of action arising under the Bankruptcy Code"; (ii) revealed the existence of breach of contract causes of action and discussed the nature of those causes of action; (iii) indicated the possible amounts of recovery (half of the costs of developing PTech+); and (iv) clearly indicated that it intended to pursue these causes of action. In addition, HDD Rotary went a step further by specifically listing Tiger Trading as an entity against which it planned to bring retained causes of action postconfirmation.

---

[1] The Fifth Circuit did not state that every factor mentioned was necessary for proper claim preservation as it was simply contrasting the proper retention language used by Texas Wyoming Drilling with the insufficient language used in *United Operating*. *In re Texas Wyoming Drilling, Inc.*, 547 F.3d at 551. Yet if all factors approved of by the Fifth Circuit are present, as in the present case, then there is no question that the claims were properly preserved.

8

### *United Operating* Inapplicable?

Although the question need not be decided today, it is not clear that *United Operating*'s requirement is applicable in this case. The present situation is materially distinguishable from the postconfirmation lawsuits seeking affirmative recovery brought by the reorganized debtors in *United Operating* and *Texas Wyoming Drilling*.

Although styled as a breach of contract right of action, Ogle's counterclaim is similar to the affirmative defense of recoupment. *See* BLACK'S LAW DICTIONARY p.1302 (8th ed.) (listing one definition for "recoupment" as the affirmative defense that plaintiff's claim should be reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction). The Court does not believe *United Operating* would apply to an affirmative defense asserted postconfirmation in a creditor's adversary proceeding filed preconfirmation.

Ogle may have pled a breach of contract counterclaim, instead of the affirmative defense of recoupment, because Texas law only allows recoupment in very narrow circumstances. *See Southern Pacific Co. v. Porter*, 331 S.W.2d 42 (Tex. 1960) ("[The defense of recoupment] must be predicated upon a factor which would vitiate a contract either in whole or in part as of the time the contract was made."); *see also Bray v. Bray*, 1999 Tex. App. LEXIS 4448 (Tex. Ct. Ap. – San Antonio 1999) (noting same). Whether styled as an affirmative defense or a breach of contract counterclaim, the result sought is the same—a reduction in the amount of sale proceeds Tiger Trading will recover if it is determined that Tiger Trading owns 30% of PTech+. Ogle is not seeking an affirmative recovery from Tiger Trading. Ogle seeks to limit Tiger Trading's recovery should the primary defense fail.

Furthermore, the purpose behind the *United Operating* requirement (ensuring sufficient notice to creditors) is not at issue in this case. The Fifth Circuit stated in *United Operating*:

> [Requiring "specific and unequivocal" language for postconfirmation debtor standing] is a logical consequence of the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time. To facilitate this timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation. Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it—absent specific and unequivocal retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote.

540 F.3d at 355 (internal citations and quotations omitted). In *Texas Wyoming Drilling*, the Fifth Circuit more succinctly stated the purpose of the *United Operating* requirement: "placing creditors on notice of the claims the postconfirmation debtor intends to pursue." 547 F.3d at 551.

Tiger Trading filed this adversary proceeding prior to confirmation. Although an answer was not filed preconfirmation, all parties were made aware that HDD Rotary rejected any claim of ownership interest by Tiger Trading before they voted on the plan. (*See, e.g.*, Case No. 11-38053, ECF No. 160-3 at 6-7).

The agreed order on Tiger Trading's motion for adequate protection indicated to all creditors that this issue would not be resolved prior to plan confirmation. That necessarily meant that final settlement of all of the debtor's assets and liabilities would be delayed until postconfirmation. All creditors knew that the outcome of the adversary proceeding had the potential to affect their share of the sale proceeds.

Tiger Trading argues that creditors did not have sufficient notice that the Reorganized Debtor planned to pursue a postconfirmation breach of contract counterclaim against Tiger Trading. As discussed in the previous section, the Court finds that the breach of contract counterclaim was properly retained and that creditors had sufficient notice. Even if Tiger Trading were correct, however, Ogle's counterclaim does not alter the range of possible

10

outcomes to the adversary proceeding, something the creditors surely considered prior to voting on the plan.

All parties knew preconfirmation that HDD Rotary and Tiger Trading took diametrically opposed positions on the PTech+ ownership issue (30% ownership argued by Tiger Trading versus no ownership interest argued by HDD Rotary). Therefore, all parties knew of, and could have considered prior to voting, at least three quite different outcomes to this adversary proceeding: Tiger Trading might be awarded a 30% ownership interest in PTech+ (reducing the amount of sale proceeds to be distributed amongst all creditors), Tiger Trading might be found to have an unsecured claim against the estate for a prepetition breach of contract (which would primarily affect the amounts distributed to unsecured creditors), or Tiger Trading might receive nothing.

For Ogle's breach of contract counterclaim to be successful, Tiger Trading's argument that it owns 30% of PTech+ must first succeed. This would result in an award to Tiger Trading of at most 30% of the sale proceeds, which would then be reduced by 50% of PTech+'s development costs. This result falls squarely within the range of outcomes the creditors were aware of, and could have considered, preconfirmation even if the creditors lacked notice of the potential counterclaim.

This breach of contract counterclaim arises out of the same set of operative facts as Tiger Trading's preconfirmation adversary proceeding. The counterclaim is akin to, and would have the same effect as, the affirmative defense of recoupment. The counterclaim does not seek affirmative recovery from Tiger Trading. If the counterclaim is successful, Tiger Trading's recovery will be within the range of outcomes the creditors contemplated when voting on the plan. This situation is materially distinguishable from the postconfirmation lawsuits seeking

11

affirmative recovery brought by the reorganized debtors in *United Operating* and *Texas Wyoming Drilling*.

## Conclusion

The Court will enter an order in accordance with this Memorandum Opinion.

SIGNED **July 16, 2012.**

                              Marvin Isgur
             UNITED STATES BANKRUPTCY JUDGE